Ex Parte Diego Salvador Antúnez Roca, peticionario; José Antonio Antúnez Reyes, apelante.

Núm. 7586.—*Sometido:* Diciembre 1, 1938. *Resuelto:* Febrero 10, 1939.

*José C. Jusino,* abogado del apelante; *Damián Monserrat, Jr.,* abogado de los apelados.

---

* Nota: Véase el prefacio.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Diego Salvador Antúnez Pujols falleció abintestato en la ciudad de Río Piedras el 29 de enero de 1936. Dejó como únicos y universales herederos a sus tres hijos legítimos llamados Diego Salvador, Salvador, y José Antonio Antúnez Roca, y a un hijo natural reconocido llamado José Antonio Antúnez Reyes.

La Corte de Distrito de San Juan puso los bienes de la herencia en administración judicial, y más tarde nombró al Sr. Gabriel de la Haba contador partidor, presentando éste, con fecha 5 de marzo de 1937, a la consideración del indicado tribunal, un informe contentivo de las operaciones par-ticionales.

Se opuso el hijo natural a la aprobación del informe. La corte señaló día para oír a las partes interesadas, comparecieron todas y fueron oídas, dictándose por la corte la resolución aprobatoria del informe el día 28 de mayo de 1937.

Contra la indicada resolución estableció el hijo natural el presente recurso, imputando a la corte inferior la comisión de los siguientes errores:

1. "La Corte erró al resolver que el menor José Antonio Antúnez Reyes, hijo natural reconocido del causante, don Salvador Antúnez Pujols, ha de haber la suma de $12,152.70 en vez de $15,624.88.

2. "La Corte erró al aprobar bajas montantes a la suma de $17,461.04, sin que existiera reclamación ni prueba alguna sobre dichas bajas, y no obstante nuestra oposición.

3. "La Corte erró al no ordenar la eliminación de la base séptima del informe del Contador Partidor. (Pág. 13 de la transcripción.)

4. "La Corte erró al no ordenar la eliminación total de la recomendación especial del Contador Partidor que bajo el número tres hizo, y que aparece a la página 25 de la transcripción, y que expuso en los siguientes términos:

" 'Estando pendiente una reclamación del abogado don Ángel N. Parra, a que hace referencia la base sexta, página doce de este informe, y siendo esta reclamación una cosa litigiosa y no liquidada, deben adjudicarse los bienes a los distintos herederos, sujetos a las

resultancias de este litigio, y para responder cada cual con lo que se le adjudique, de la parte que le corresponda, de obtener sentencia a su favor el reclamante, o sea, en la proporción de tres veintisiete avos el hijo natural y ocho veintisiete avos cada hijo legítimo.' ''

En el informe del contador partidor la herencia de Salvador Antúnez Pujols se divide en tres partes correspondientes a la legítima corta, la legítima larga y libre disposición, respectivamente. Los dos tercios de legítima se dividen entre los tres hijos legítimos, correspondiendo a cada uno de ellos por concepto de legítima la cantidad de $24,305.38. Determinada así la participación legítima de cada uno de los tres hijos legítimos, se adjudicó en el tercio de libre disposición, al hijo natural la mitad de dicha suma, o sea $12,152.69. El resto del tercio de libre disposición se adjudicó a los tres hijos legítimos por iguales partes.

No comprendemos cómo puede dudar siquiera la representación del hijo natural que no sea ésta la forma correcta de distribuir el caudal hereditario. Son perfectamente claros los artículos 902 y 767 del Código Civil (edición de 1930), que constituyen la ley aplicable al caso.

El artículo 902, que se halla entre los preceptos reguladores de la sucesión intestada y bajo el epígrafe: ''De los hijos naturales reconocidos'', en la parte pertinente dice así:

''En caso de quedar descendientes o ascendientes legítimos, los descendientes naturales reconocidos sólo percibirán de la herencia la porción que se les concede en los artículos 767 y 768 de este código.''

Y el artículo 767, que es el que determina en la sucesión testada la cuota hereditaria correspondiente al hijo natural reconocido cuando concurre con hijos o descendientes legítimos, prescribe:

''Art. 767. Cuando el testador deje hijos o descendientes legítimos e hijos naturales legalmente reconocidos, tendrá cada uno de éstos derecho a la mitad de la cuota que corresponda a cada uno de los legítimos no mejorados siempre que quepa dentro del tercio de

libre disposición, del cual habrá de sacarse, deduciendo antes los gastos de entierro y funeral.

"Los hijos legítimos podrán satisfacer la cuota que corresponda a los naturales en dinero o en otros bienes de la herencia a justa regulación."

Comentando Manresa los artículos correspondientes del Código Civil español, dice:

"En concurrencia con descendientes o ascendientes legítimos, los hijos naturales reconocidos o legitimados por concesión Real reciben en la sucesión intestada la misma porción que les corresponde en la testamentaria, con arrglo al art. 840 y al 841. . . . El art. 942 no hace más que reconocer a los hijos naturales en la sucesión abintestato los mismos derechos que les concede la ley en la sucesión testada. . . ." (Manresa, tomo 7, pág. 103.)

"El art. 942 es suficientemente claro. Nos referimos al comentario de los arts. 840, 841, 843 y 844.

"Entiéndase bien que, aun cuando se trata de sucesión intestada, el hijo natural, en concurrencia con descendientes legítimos del causante, sólo tiene derecho a la porción que le concede el art. 840, o sea la mitad de la cuota que corresponda como legítima *de los dos tercios* del caudal, o la que proceda en sucesión testamentaria a cada uno de los hijos legítimos no mejorados, siempre que quepa dentro del tercio de libre disposición, deduciendo antes los gastos de entierro y funeral." (Id., pág. 106.)

"En el art. 840 no se señala una cuota divisible entre los hijos naturales, sino que se determina la porción correspondiente a *cada uno* de esos hijos, que es siempre la mitad de lo que corresponde percibir por su legítima a *cada uno* de los hijos legítimos.

"El objeto de la ley no puede ser más evidente: no quiere consentir que en caso alguno sea la legítima de un hijo natural mayor ni aun igual a la de un hijo legítimo; por exigencia legal, como herederos forzosos, nunca percibirán más que la *mitad*. Éste es el primer límite de la legítima de los hijos naturales en concurrencia con hijos legítimos." (Tomo 6, pág. 562.)

Por lo expuesto, fácil es comprender que no existe el primero de los errores señalados.

El apelante no demuestra que la corte cometiera el error que le atribuye al aprobar las bajas del caudal que aparecen en el informe del contador partidor, montantes a

$17,461.04. La corte oyó a las partes, examinó los comprobantes que le presentaron y, apreciando la prueba que tuvo ante sí, aprobó dichas bajas. A falta de una demostración de error manifiesto o de pasión, prejuicio o parcialidad por parte de la corte inferior, no debemos intervenir con su discreción en la apreciación de la evidencia.

■ Tampoco encontramos que se haya cometido error alguno por la corte al no ordenar la eliminación de la base séptima del informe del contador partidor. Dicha base séptima dice así:

"De la documentación sometida por el Administrador Judicial resulta que las rentas de los bienes bajo administración judicial eran depositadas en cuenta corriente en el Banco Popular de P. R., habiendo sido aplicadas a los gastos necesarios al funcionamiento de la sucesión, tales como pago de contribuciones, anticipo al hijo natural en la expresada suma de mil ochocientos dólares, reparaciones de los bienes, gastos de peritos tasadores, pensiones alimenticias a los coherederos, y otros detalles, quedando el 28 de febrero de 1937 un saldo de seiscientos treinta y cuatro dólares con setenta y cuatro centavos, que constituye el particular número diez y seis del inventario."

No cometió error alguno la corte inferior al negarse a ordenar la eliminación de la recomendación especial del contador partidor que dice así:

"Estando pendiente una reclamación del abogado don Ángel N. Parra, a que hace referencia la base sexta, página doce de este informe, y siendo esta reclamación una cosa litigiosa y no liquidada, deben adjudicarse los bienes a los distintos herederos, sujetos a las resultancias de este litigio, y para responder cada cual con lo que se le adjudique, de la parte que le corresponda, de obtener sentencia a su favor el reclamante, o sea, en la proporción de tres veintisiete avos el hijo natural y ocho veintisiete avos cada hijo legítimo."

Parece lo más lógico y prudente no dejar pendiente la partición de la herencia hasta que se resuelva el pleito establecido por el abogado Angel N. Parra contra la sucesión. Ningún fin práctico se conseguiría posponiendo la partición y por el contrario se exponen los herederos, entre los cuales

se halla el hijo natural reconocido, a incurrir en los gastos consiguientes con motivo de subsistir la administración judicial.

*No existiendo, a nuestro juicio, los errores señalados por el apelante, procede confirmar la resolución de la Corte de Distrito de San Juan de 28 de mayo de 1937, por la que se aprobó el proyecto de partición sometido por el contador partidor.*

El Juez Presidente Sr. Del Toro no intervino.